IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE BROWN | : | |
|     Petitioner | : | |
| | : | |
|     v. | : | CIVIL ACTION |
| | : | |
| IMMIGRATION AND | : | NO. 02-4600 |
| NATURALIZATION SERVICE, et al. | : | |
|     Respondent. | : | |

## **ORDER**

AND NOW on this _____ day of _____, 2002, upon consideration of the Government's Response to Petitioner's Writ of Habeas Corpus, and any response thereto, it is hereby ORDERED that the Petition is dismissed with prejudice.

                                                                                                          _____
                                                                                                          U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE BROWN | : | |
|    Petitioner | : | |
| | : | |
|    v. | : | CIVIL ACTION |
| | : | |
| IMMIGRATION AND | : | NO. 02-4600 |
| NATURALIZATION SERVICE, et al. | : | |
|    Respondent. | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
PETITION FOR WRIT OF HABEAS CORPUS**

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Susan Becker, Assistant United States Attorney for the District, on behalf of respondent, the Immigration and Naturalization Service ("the Service"), files this response in opposition to George Brown's petition for writ of habeas corpus.

I.  **INTRODUCTION**

This is a habeas petition brought under 28 U.S.C. § 2241 by George Brown, a native and citizen of Jamaica. Brown entered the United States as a nonimmigrant visitor on September 23, 1993, with authorization to remain in the United States until March 22, 1993. He remained in the United States beyond March 22, 1993 without authorization from the Service. (See Exhibit 1). On April 24, 1995, Brown was convicted in Philadelphia Court of Common Pleas of the offenses of possession of a

controlled substance, and possession of a controlled substance with intent to deliver/distribute. (See Exhibits 1 and 2).[1] On June 23, 1995, Brown was again convicted in Philadelphia Court of Common Pleas of possession of a controlled substance, and possession of a controlled substance with intent to deliver/distribute. (See Exhibits 1 and 3).

On February 12, 1997, the Service issued an Order to Show Cause and Notice of Hearing, advising Brown that he was subject to deportation from the United States because: (1) he had remained in the United States without authorization; (2) because of his drug trafficking convictions; and (3) because he had been convicted of an aggravated felony as defined by the Immigration and Nationality Act ("the Act"). See 8 U.S.C. § 1227(a)(1)(B) (removable for being present in the United States without authorization); 8 U.S.C. §1227(a)(2)(B)(i) (removable for being convicted of a controlled substances offense); and 8 U.S.C. § 1227(a)(2)(A)(iii) (removable for being convicted of on aggravated felony).[2] (See Exhibit 3).

On March 18, 1997, the Immigration Judge held a hearing to decide whether Brown should be deported. The Immigration Judge ordered Brown deported to

---

[1] The criminal records relating to the 1994 conviction refer to Choley McKenzie, which was an alias used by Mr. Brown. (See Exhibit 6).

[2] As discussed further below, an aggravated felony is defined in 8 U.S.C. § 1101(a)(43)(B) as including any illicit trafficking in a controlled substance.

Jamaica based on the charges set forth in the Order to Show Cause. (See Exhibit 4). Brown did not make an application for relief from deportation, and he waived his right to an appeal. (See Exhibit 4). Brown was then deported to Jamaica by way of a USAirways flight on March 31, 1997. Brown was advised of the penalties for reentering the country without first getting the consent of the Attorney General. (See Exhibit 5).

Despite Brown's signature on the warning document, Brown reentered the United States without getting permission. On October 6, 1998, an arrest warrant was issued by the United States District Court for the Middle District of Pennsylvania for violation of 8 U.S.C. § 1326(a) (illegal reentry after deportation). (See Exhibit 6). However, the government did not catch up with Brown at that time. In the meantime, Brown was engaging in a scheme to defraud several banks in the Harrisburg area. On March 15, 2000, Brown was arrested by the FBI and charged with bank fraud. (See Exhibit 6). On April 18, 2001, Brown pleaded guilty to conspiracy in violation of 18 U.S.C. § 371, and reentry of a deported alien, in violation of 8 U.S.C. § 1326(a) and (b)(2). He was sentenced to 46 to 57 months in prison, and ordered to pay restitution in the amount of $44,664.38. Brown is currently serving his sentence at FCI-Fort Dix in New Jersey.

On May 4, 2002, the Service issued a notice of its intent to reinstate Brown's prior deportation order, pursuant to Section 241(a)(5) of the Act [8 U.S.C. § 1231(a)(5)] and 8 C.F.R. 241.8. (See Exhibit 8). On August 1, 2001, Brown signed an

acknowledgment and response, stating that he did not wish to make a statement contesting the determination that he was removable from the United States as an alien who had illegally reentered the country. (Id.). The Service therefore determined that Brown was subject to removal based on the reinstatement of his previous deportation order. (Id.).

Brown filed this habeas petition on or about July 10, 2002, challenging various aspects of his final order of deportation. Brown's petition appears to raise four issues.[3] First, he claims that he is entitled to relief from deportation, either in the form of "suspension of deportation," which was found at Section 212(c) of the Act before it was repealed in 1996, or its successor provision "cancellation of removal," found at Section 240A of the Act [8 U.S.C. § 1229b]. Second, he claims that the Service erred by not allowing him to adjust his status to that of a lawful permanent resident pursuant to Section 245 of the Act [8 U.S.C. § 1255]. Third, he argues that the Service improperly reinstated his previous deportation order. Finally, Brown claims that his constitutional rights were violated at his 1997 immigration hearing because it was conducted by video conference rather than in person. For the reasons discussed below, none of these arguments has any merit.

---

[3] In his petition at page four, Brown identifies five issues; numbers 1 and 4 both seem to relate to the issue of whether he would be entitled to any relief from removal, and we therefore address them together.

II.     **LEGAL ARGUMENT**

    A.     Brown Is Not Entitled to Relief From Deportation

First, Brown claims that he is entitled to relief from deportation, either in the form of "suspension of deportation," which was found at Section 244 of the Act [8 U.S.C. § 1254] before it was repealed in 1996, or its successor provision "cancellation of removal," found at Section 240A of the Act [8 U.S.C. § 1229b].

Under the Act in effect since 1997, certain removable aliens can apply for a form of relief known as "cancellation of removal." 8 U.S.C. § 1229b. Aliens such as Brown who are not lawful permanent residents would apply under Section 240A(b) of the Act. 8 U.S.C. § 1229b(b). The provision states that the Attorney General may cancel removal of an alien who is deportable from the country if the alien (a) has been physically present in the United States for a continuous period of 10 years immediately preceding the date of such application; (b) has been a person of good moral character during that period; (c) has not been convicted of certain criminal offenses; and (d) establishes that his removal would result in exceptional and extremely unusual hardship to certain U.S. citizen relatives. 8 U.S.C. § 1229b(b)(1)(A)-(D).

Brown does not meet the requirements for cancellation of removal. Even today, he has not been physically present in the United States for 10 years. However, under 8 U.S.C. § 1229b(d), his period of continuous physical presence is deemed to end on the date that the Service issued the Order to Show Cause, which gives him only three

years and a few months, far less than the amount of time needed to satisfy this requirement. Moreover, Brown was and is ineligible for cancellation of removal because he has been convicted of an offense under 8 U.S.C. § 1227(a)(2) (his drug trafficking convictions). See 8 U.S.C. § 1229b(b)(1)(C). The Service would also argue that he is not a person of "good moral character" as required by 8 U.S.C. § 1229b(b)(1)(D), because he has been convicted of an aggravated felony. See 8 U.S.C. § 1101(f)(8) (defining good moral character). Thus, even if Brown could establish that his removal was a hardship to family members, he would not be eligible for this form of relief.

Brown spends several pages of his brief (see pp. 5-9) discussing whether he was properly found to be deportable as an aggravated felon based on his 1994 and 1995 drug convictions. It is clear that he was properly found to be an aggravated felon, because an aggravated felony is defined in 8 U.S.C. § 1101(a)(43)(B) as including any illicit trafficking in a controlled substance. Since Brown was convicted of both possession and possession *with intent to distribute* a controlled substance, he is therefore an aggravated felon under the Act. The fact that he received a sentence of probation is of no moment, and does not take him outside the definition of an aggravated felon. The case petitioner cites, U.S. v. Banda-Zamora, 178 F.3d 728, 730 (5th Cir. 1999), deals with the definition of an aggravated felony for purposes of an enhancement under the sentencing guidelines, not the definition of an aggravated felony under the Immigration and Nationality Act. Moreover, there are subsections within the definition of "aggravated

felony" where there is a requirement of a minimum sentence; there is no such reference in 8 U.S.C. § 1101(a)(43)(B) relating to controlled substance violations. Compare 8 U.S.C. § 1101(a)(43)(F)(G) and (J) (sentence must be one year or more to qualify as an aggravated felony).

In any event, whether or not Brown is an aggravated felon has no bearing on his eligibility for relief. Under 8 U.S.C. § 1229b(b)(1)(C), Brown is ineligible for cancellation of removal because he has been convicted of an offense under Section 237(a)(2) of the Act. The crime does not even have to be an aggravated felony to bar relief under this section.[4]

Before the enactment of the "cancellation of removal" provision, there was a similar form of relief available known as "suspension of deportation." See 8 U.S.C. § 1254 (since repealed). It required seven continuous years in the country. At the time of Brown's hearing, he had only been in the country for three and a half years and clearly was not eligible for this type of relief either. In any event, the Immigration Judge's order reflects that Brown did not apply for any form of relief, presumably because there would have been no basis to grant him such relief. (See Exhibit 4).

---

[4]    Brown may be confused because under 8 U.S.C. § 1229b(a) (the section relating to cancellation of removal for lawful permanent residents), the crime must be an aggravated felony to bar the alien from relief. Non-lawful permanent residents fall under 8 U.S.C. § 1229b(b).

B. <u>Brown Is Not Entitled To Adjust His Status to a Lawful Permanent Resident.</u>

Brown appears to be arguing that he should have been permitted to adjust his status to that of a lawful permanent resident under Section 245 of the Immigration and Nationality Act [8 U.S.C.1255], based on a petition filed by his U.S. citizen wife. It is not clear from Brown's petition whether he is referring to an application he made at the time of his 1997 immigration hearing, or whether he has a current petition pending.[5] In either case, Brown was and is ineligible to adjust his status.

If Brown attempted to adjust his status at the time of his immigration hearing, his application would have been denied because of his criminal conviction. In order to adjust status to permanent resident under 8 U.S.C. § 1255(a)(2), an alien must be "admissible to the United States for permanent residence." Under 8 U.S.C. § 1182(a)(2)(C), Brown is inadmissible to the United States as an alien who has been convicted of a drug trafficking offense. He therefore was ineligible to adjust status, regardless of what evidence he or the Service presented about the validity of his marriage to a U.S. citizen. If he has a current application pending that was filed in 1998, Brown is now ineligible to adjust his status for the additional reason that he is inadmissible as an

---

[5] Brown states in his petition (p.3) that his wife filed a petition on his behalf in 1998 and that the petition is still pending. If Brown does have a current application pending, the Service's District Director in New Jersey (not Philadelphia) would have jurisdiction over it because that is where Brown currently resides.

alien who has already been ordered deported at the time of his application.  See 8 U.S.C. § 1182(a)(9)(C)(i)(I and II) (an alien who is "unlawfully present in the United States . . . and has been ordered removed . . . is inadmissible").

    C.    Brown's Deportation Order Was Lawfully Reinstated

Brown argues that the Service was not entitled to reinstate his March 18, 1997 deportation order (which will be carried out upon the completion of his prison term) because his deportation order pre-dates the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which became effective on April 1, 1997.  There is no basis for this claim.  8 U.S.C. § 1231(a)(5) states that:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5); see also 8 CFR 241.8.

Brown argues that this provision does not apply to him, because he has an order of *deportation*, rather than an order of *removal*.[6]  However, Section 309(d)(2) of IIRIRA specifically stated that "any reference in law to an order of removal shall be

---

[6] Before IIRIRA, the Service used the term "deportation proceedings" which was replaced by the term "removal proceedings."

deemed to include a reference to an order of exclusion and deportation or an order of deportation." See Murillo v. INS, 2001 WL 1155275 (N.D. Ill. Sept. 28, 2001) ("Congress expressed its intention to apply [8 U.S.C. § 1231(a)(5)] to aliens such as Petitioner, against whom deportation orders were entered prior to the IIRIRA's enactment."). See also Zisimopoulos v. Reno, 1998 WL 437266*1 n. 2 (E.D.Pa.1998) (Gawthrop, J.) (same); Mendez-Tapia v. Sonchik, 998 F.Supp. 1105, 1108 (D.Ariz.1998) (same); United States v. Pantin, 155 F.3d 91 (2d Cir.1998) (discussing IIRIRA § 309(d)(2) and finding that "removal" encompasses "deportation" for purposes of the criminal illegal reentry statute). Thus, it is clear that 8 U.S.C. § 1231(a)(5) applies to petitioner and his 1997 deportation order may be reinstated.

    D.    Brown's Hearing Before the Immigration Judge Was Constitutional.

Finally, Brown argues that his hearing before the Immigration Judge was flawed because it was held by video conference rather than in person, and that the Judge was unable to assess credibility of witnesses. This argument fails for several reasons. First, the entire point of a video conference is that one *can* assess the credibility of witnesses, because unlike a telephone conference, one can watch the witness testify. Second, video conferencing is specifically provide for in the regulations:

> An Immigration Judge may conduct hearings through video conference to the same extent as he or she may conduct hearings in person. An Immigration Judge may also conduct a hearing through a telephone conference, but an evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the alien involved

>after the alien has been advised of the right to proceed in
>person or, where available, through a video conference,
>except that credible fear determinations may be reviewed by
>the Immigration Judge through a telephone conference
>without the consent of the alien.

8 CFR 3.25(c). The regulation specifically provides that the alien must consent to the hearing (other than for credible fear determinations) if it is to be by telephone. There is no such consent requirement for video conference, because the technology provides the same protection afforded by an in person hearing. Third, Brown waived this argument by failing to raise it before the Immigration Judge and failing to take an appeal to the Board of Immigration Appeals at the time of his initial deportation proceedings. See 8 U.S.C. § 1252(d)(1)(a court may review a final order of removal only if the alien has exhausted all administrative remedies available to him as of right).

Finally, to prevail on a due process challenge to deportation proceedings, an alien must show prejudice. Lata v. INS, 204 F.3d 1241, 1246 (9th Cir. 2000); Kuciemba v. I.N.S., 92 F.3d 496, 501 (7th Cir. 1996). To show prejudice, the alien must demonstrate that the alleged violation affected the outcome of the proceedings. Prejudice will not be presumed. Larita-Martinez v. INS, 220 F.3d 1092, 1094 (9th Cir. 2000). Brown has failed to make any showing of prejudice, as he was not entitled to any form of relief as a matter of law.

III.   CONCLUSION

Petitioner Brown cannot establish any violation of the Constitution or statutes of the United States, and there is no basis for the Court to grant the relief he requests. For the foregoing reasons, the government respectfully requests that the Court dismiss the Petition with prejudice.

Respectfully,

PATRICK L. MEEHAN
United States Attorney

Dated: September 12, 2002

JAMES G. SHEEHAN
Assistant United States Attorney
Chief, Civil Division


SUSAN R. BECKER
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia PA 19106-4476
(215) 861-8310 Telephone
(215) 861-8349 Facsimile

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of September, 2002, I caused a true and correct copy of the foregoing Government's Response to Plaintiff's Petition for Writ of Habeas Corpus to be served by first class mail, postage prepaid, upon the following:

    George Brown
    54090-066
    FCI Fort Dix
    P.O. Box 4000
    Fort Dix, NJ  08640

    Pro se petitioner

_____
Susan R. Becker