IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL GEORGE BROWN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| IMMIGRATION AND NATURALIZATION | : | |
| SERVICE | : | NO. 02-4600 |

ORDER

AND NOW, this 16th day of December, 2002, upon
consideration of the pro se petition of Daniel George Brown,
a/k/a Choley McKenzie, for a writ of habeas corpus, brought under
28 U.S.C. § 2241 (docket entry # 1), the Government's response
(docket entry # 9), and Brown's reply (docket entry # 11), and
the Court finding that:

(a)  Petitioner Brown is a citizen of Jamaica who
entered the United States as a non-immigrant visitor on September
23, 1992, with authorization to remain in the United States until
March 22, 1993;

(b)  He remained in the United States beyond March 22,
1993 without the authorization of the Immigration and
Naturalization Service ("INS");

(c)  On February 16, 1994, Brown was arrested after he
sold a packet of marijuana to an undercover police officer and
was found to be in possession of an additional three packets of
marijuana, see Govt.'s Resp. Ex. 2;

(d)  On June 23, 1995, Brown was convicted in the
Philadelphia County Court of Common Pleas for possession of a
controlled substance as well as possession of a controlled

substance with intent to distribute, and he was sentenced to eighteen months probation, id.;

(e)  On December 26, 1994, Brown was arrested and charged with possession of 36 packets of marijuana weighing 65.2 grams, and on April 24, 1995, he was found guilty of possession as well as possession with intent to distribute and sentenced to twelve months probation, see id. Ex. 3;

(f)  On February 12, 1997, the INS issued an Order to Show Cause and Notice of Hearing informing Brown that he was subject to deportation because he (1) had remained in the United States without authorization, (2) had been convicted of drug trafficking offenses, and (3) had been convicted an aggravated felony as defined by the Immigration and Nationality Act ("INA")[1], see id. Ex. 1;

(g)  After a hearing on March 18, 1997, the Immigration Judge ordered Brown to be deported based on the charges set forth in the Order to Show Cause, see id. Ex. 4, and Brown both declined to apply for relief from deportation and waived his right to an appeal, id.;

(h)  Brown was deported on March 31, 1997, but he subsequently reentered the United States without the consent of the Attorney General, in violation of 8 U.S.C. § 1326(a);

---

[1]  Brown vigorously contends that he was never convicted of an aggravated felony within the meaning of the INA. See Pet. at 5-8; Reply at 3-7.  We need not resolve this issue because, in any event, Brown was subject to deportation as a result of his drug offenses.  See Govt. Ex. 1.

-2-

(i)   On October 6, 1998, the United States District Court for the Middle District of Pennsylvania issued a warrant for Brown's arrest for his violation of 8 U.S.C. § 1326(a), <u>see id.</u> Ex. 6;

(j)   While Brown's arrest warrant was pending, he engaged in a scheme to defraud several banks in the Harrisburg area, for which he was arrested on March 15, 2002;

(k)   Brown pleaded guilty to conspiracy in violation of 18 U.S.C. § 1371 and reentry of a deported alien in violation of 8 U.S.C. § 1326(a) and (b)(2);

(l)   Judge William W. Caldwell of the United States District Court for the Middle District of Pennsylvania sentenced Brown to 51 months imprisonment, which he is now serving at FCI-Fort Dix[2];

(m)   On May 4, 2002, the INS issued notice of its intent to reinstate Brown's prior deportation order, pursuant to 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8;

(n)   After Brown signed an acknowledgment and response stating that he did not wish to make a statement concerning the INS's determination, the INS determined that he is subject to removal as an alien who had illegally reentered the country, Govt.'s Resp. Ex. 8;

---

[2]   Judge Caldwell also imposed two years' supervised release, a special assessment of $200.00, and ordered Brown to pay restitution in the amount of $44,664.38.

-3-

(o)  Before us is Brown's <u>pro</u> <u>se</u> petition for writ of habeas corpus, which advances four major arguments[3];

(p)  First, Brown argues that he is entitled to relief from deportation under either 8 U.S.C. § 1254 or its successor provision, 8 U.S.C. § 1229b;

(q)  Section 1254 (now repealed) provided a form of relief known as "suspension of deportation" for aliens who satisfied certain criteria and whose deportation would, in the opinion of the Attorney General, result in "extreme hardship" to the alien or to his spouse, parent, or child;

(r)  As a result of his controlled substance offenses, Brown would only have been eligible for relief under Section 1254 if he had been continuously present in the United States for ten years following the commission of a criminal act that constitutes grounds for deportation, <u>see</u> 8 U.S.C. § 1254(a)(2) (requiring ten years continuous presence after the commission of one of the criminal acts specified in 8 U.S.C. § 1251(a)(2) (now repealed), one of which was any controlled substance offense other than a single conviction for possession for personal use of 30 grams or less of marijuana);

(s)  At the time of Brown's hearing before the Immigration Judge on March 18, 1997, slightly less than three years had elapsed since his first arrest for selling marijuana to

_____

[3]  Brown's petition actually contains five major arguments.  Pet. at 4.  For purposes of analysis, we have combined the first and fourth arguments because both concern his eligibility for relief under 8 U.S.C. § 1254.

a police officer, and he therefore would have been ineligible for relief under Section 1254;

(t)  Brown relies on the recent decision in <u>Beharry v. Reno</u>, 183 F.Supp.2d 584 (E.D.N.Y. 2002), to argue that, regardless of Section 1254's requirements, the INS cannot deport an alien felon without first taking into consideration the impact on a child who will be left behind in the United States and that he was therefore entitled to a hearing at the time of his 1997 deportation hearing, <u>see</u> Pet. at 14;

(u)  After careful review of the opinion in <u>Beharry</u> and consideration of its applicability to this case, we conclude that Brown's circumstances are in no way analogous to those of the petitioner in <u>Beharry</u> because Brown's deportation without a hearing on this issue would not constitute an arbitrary interference with family life[4];

_____

[4]  The petitioner in <u>Beharry</u> was a lawful permanent resident who had resided in the United States since 1982.  In November 1996, Beharry was convicted of second degree robbery for an alleged July 1996 theft of $714, for which he received a sentence of two-and-a-quarter to four-and-a-half years.  At a deportation hearing in September 1997, Beharry requested a compassionate hearing under INA section 212(c), based on the fact that his mother, sister, and young daughter lived in the United States.  His request was denied, and after a timely appeal to the Board of Immigration Appeals, Beharry filed a habeas petition. <u>Beharry</u>, 183 F.Supp.2d at 586-87.
    Judge Weinstein of the United States District Court for the Eastern District of New York ordered the INS to conduct a hearing under INA section 212(h) of the INA to determine whether Beharry should be granted discretionary relief from deportation based on "extreme hardship" to his family.  Relying on his earlier decision in <u>Maria v. McElroy</u>, 68 F.Supp.2d 206 (E.D.N.Y. 1999), Judge Weinstein held that Section 212(h), which on its face did not apply to Beharry because the INA classifies him as an "aggravated felon," should be construed so as to avoid
(continued...)

(v)  Brown is also ineligible for "cancellation of removal" under Section 1229b, which requires ten years physical presence in the United States[5] and excludes from relief any alien convicted of a controlled substance offense other than a single offense involving possession for personal use of thirty grams or

---

[4](...continued)
conflict with customary international law and the Government's treaty obligations.  These sources of international law, Judge Weinstein concluded, proscribe "arbitrary" interference with family relations.  Beharry, 183 F.Supp.2d at 600-01, 604; Maria, 68 F.Supp.2d at 234 ("[T]he rights to be free from arbitrary interference with family life and arbitrary expulsion are part of customary international law.").
    Judge Weinstein then concluded that Beharry's deportation without a hearing on his family circumstances would be "arbitrary" because, as a result of the 1996 amendments to the INA, Beharry's criminal offense had been reclassified as an "aggravated felony" after he had committed it.  See Beharry, 183 F.Supp.2d at 588 (noting that at the time of the offense, INA section 101(a)(43) deemed a theft offense to be an aggravated felony only if the term of imprisonment was greater than five years and that the 1996 amendments reduced the requisite term of imprisonment to one year); see also id. at 605 (limiting the holding of Beharry to aliens who "have been convicted of an 'aggravated felony' as defined after they committed their crime, but which was not so categorized when they committed the crime").
    Even if we agreed with Judge Weinstein that we must interpret the INA in a manner that avoids arbitrary interference with family life, we would still conclude that it would not be arbitrary to deny Brown a Section 1254 hearing. Unlike the statutory provisions at issue in Beharry, Section 1254's denial of relief to aliens in Brown's position was never amended between 1994, when Brown committed his controlled substance offenses, and 1997, when he was deported.  In other words, if Brown had investigated the potential impact of controlled substance offenses on his eligibility for relief under Section 1254 before he decided to commit his 1994 crimes, he would have encountered the identical statutory language that precluded his eligibility for relief in 1997.  Given this stable statutory framework, it is not arbitrary to deny Brown relief under Section 1254 based on his inability to fulfill the express provisions of the statute.

[5]  At the latest, Brown's period of continuous physical presence ended for Section 1229b purposes on February 12, 1997, when the INS issued its Order to Show Cause.  See 8 U.S.C. § 1229b(d)(1).

less of marijuana, see 8 U.S.C. § 1229b(b)(1)(C) (incorporating 8 U.S.C. § 1227(a)(2));

(w)  Second, Brown argues that, based on his wife's United States citizenship, he should have been allowed to adjust his status to that of an alien lawfully admitted for permanent residence under 8 U.S.C. § 1255;

(x)  According to his Petition, Brown raised his eligibility for adjustment of status at both his 1997 deportation hearing and in a 1998 petition, see Pet. at 3;

(y)  However, Brown was not eligible for adjustment of his status in either 1997 or 1998;

(z)  An alien is only eligible for adjustment of status if he is "admissible to the United States for permanent residence," 8 U.S.C. § 1255(a)(2), and Brown is inadmissible because he has committed controlled substance offenses, see 8 U.S.C. § 1182(a)(2)(A)(i)(II);

(aa)  Moreover, Brown is ineligible for status adjustment under any petition filed in 1998 because, by that time, he had already been ordered deported, see 8 U.S.C. § 1182(a)(9)(C)(i)(I and II) (an alien is inadmissible if he illegally reenters the United States after being illegally present in the United States for an aggregate period of more than one year or after being ordered removed under any provision of law);

-7-

(bb)  Third, Brown argues that the INS could not reinstate his 1997 deportation order, which predated the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA");

(cc)  He contends that the phrase "prior order of removal," which is found in the IIRIRA's reinstatement provision, 8 U.S.C. § 1231(a)(5), does not encompass his 1997 "order of deportation";

(dd)  However, Section 309(d)(2) of the IIRIRA expressly provides that "any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation," see Mendez-Tapia v. Sonchik, 998 F.Supp. 1105, 1107 (D. Ariz. 1998);

(ee)  Brown additionally argues that Section 1231(a)(5) does not apply retroactively;

(ff)  We join the other courts that have concluded, after applying the analysis the United States Supreme Court mandated for determining whether a statute has retroactive effect, that Section 1231(a)(5) applies to aliens against whom deportation orders were entered prior to the IIRIRA's enactment, see Murillo v. Perryman, No. 01-C-3016, 2001 WL 1155275, at * 5 (N.D. Ill. Sept. 28, 2001) (citing Mendez-Tapia, 998 F.Supp. at 1108);

(gg)  Fourth, and finally, Brown challenges his 1997 deportation hearing on several grounds;

-8-

(hh)  He first contends that the hearing was flawed because it was conducted by video conference rather than in person;

(ii)  However, regulations in effect at the time of Brown's 1997 deportation hearing expressly provide (subject to exceptions not relevant here) that hearings can be conducted by video conference without the consent of the alien, see 8 C.F.R. § 3.25(c);

(jj)  Brown next argues that his 1997 hearing was unconstitutional because (1) it was postponed without notice and, (2) when the hearing ultimately took place, it was held in jail and his wife was barred from appearing as a witness, see Reply at 10-12;

(kk)  Even if these are valid claims, Brown waived them by failing to raise them before the Immigration Judge and by waiving his right to take an appeal to the Board of Immigration Appeals, see Govt.'s Resp. Ex. 4; 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right.");

(ll)  Brown responds by contending that his waiver was not "knowing and intelligent" and therefore violated his due process rights, see Reply at 12 (citing U.S. v. Lopez-Vasquez, 1 F.3d 751, 753-54 (9th Cir. 1993));

-9-

(mm)   Although we cannot determine from the record whether Brown's waiver of his right to appeal was knowing and intelligent, we need not resolve this issue;

(nn)   To prevail on a due process challenge to a deportation hearing, an alien must demonstrate that the constitutional violations affected the outcome of the proceedings, see Lata v. I.N.S., 204 F.3d 1241, 1246 (9th Cir. 2000);

(oo)   Any procedural errors or constitutional deprivations that occurred during Brown's 1997 deportation hearing would not have affected the outcome because, for all the reasons provided above, he was statutorily ineligible for any form of relief;

It is hereby ORDERED that:

1.   The petition for writ of habeas corpus is DENIED;

2.   The petitioner having failed to make a substantial showing of the denial of a constitutional right, we decline to issue a certificate of appealability, see 28 U.S.C. § 2253; and

3.   The Clerk of Court shall CLOSE this case statistically.


BY THE COURT:


_____
Stewart Dalzell, J.


-10-